## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MANNY CHONG,<br>THANE GALLO,<br><br>and ALL OTHERS SIMILARLY SITUATED,<br><br>          Plaintiff,<br>v.<br><br>NORTHEASTERN UNIVERSITY,<br><br>          Defendant. | Civil Action No.   1:20-10844-RGS |
| GAURAV SATAM, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>v.<br><br>NORTHEASTERN UNIVERSITY,<br><br>          Defendant. | Civil Action No.   1:20-10915-RGS |
| MANISHA BAHRANI, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>v.<br><br>NORTHEASTERN UNIVERSITY,<br><br>          Defendant. | Civil Action No.   1:20-10946-RGS |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**FACTUAL BACKGROUND**.............................................................................3

   I. The Plaintiffs' Allegations Against Northeastern........................................6

     A. Gaurav Satam...........................................................................................6

     B. Manisha Bahrani.......................................................................................7

     C. Manny Chong and Thane Gallo.................................................................8

     D. The "Delivery of Services" Provision in the Northeastern Catalogs..................9

**GOVERNING STANDARD**.............................................................................10

**ARGUMENT**...................................................................................................10

   II. The Complaints Do Not State Claims for Breach of Contract. ...........................10

     A. The Satam and Bahrani Complaints Are Deficient. ........................................11

     B. The Chong Complaint Does Not Allege a Breach of the SFRA.......................13

     C. Plaintiffs' Claims Are Invalid Due to the "Delivery of Services" Provisions in the Northeastern Catalogs.....................................................................................14

     D. The Satam and Bahrani Complaints Impermissibly Purport to Assert Claims Challenging the Quality of Their Education. ...............................................................16

   III. The Three Complaints Fail to State Claims for Unjust Enrichment. ..................17

   IV. The Satam and Bahrani Complaints Fail to State Claims for Conversion.........19

   **CONCLUSION** .............................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*,
  267 F.3d 30 (1st Cir. 2001) ................................................................. 2, 10

*Ambrose v. New England Ass'n of Schools and Colleges, Inc.*,
  252 F.3d 488 (1st Cir. 2001) ................................................................. 17

*Anthes v. New York Univ.*,
  No. 17cv2511(ALC), 2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018) ..................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 10

*Blake v. Prof'l Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass 2012) ................................................................. 20

*Bleller v. College of Holy Cross*,
  2013 WL 4714340 (D. Mass., Aug. 26, 2013) ................................................................. 19

*Bose Corp. v. Ejaz*,
  732 F.3d 17 (1st Cir. 2013) ................................................................. 11

*Buck v. Am. Airlines*,
  476 F.3d 29 (1st Cir. 2007) ................................................................. 10

*Discover Realty Corp. v. David*,
  2003 Mass. App. Div. 172, 2003 Mass. App. Div. LEXIS 63 (2003) ..................................... 21

*Doe v. Brandeis Univ.*,
  177 F. Supp. 3d 561 (D. Mass. 2016) ................................................................. 15

*Doe v. Town of Framingham*,
  965 F. Supp. 226 (D. Mass. 1997) ................................................................. 17

*Essigmann v. Western New England College*,
  419 N.E.2d 1047 (Mass. App. Ct. 1981) ................................................................. 15

*Firth v. T.D. Bank N.A.*,
  2014 WL 172201 (D. Mass. Jan. 14, 2014) ................................................................. 3, 11

*G v. Fay Sch., Inc.*,
  282 F. Supp. 3d 381 (D. Mass. 2017) .................................................................... 15

*Gally v. Columbia Univ.*,
  22 F. Supp. 2d 199 (S.D.N.Y. 1998) ..................................................................... 17

*Guckenberger v. Boston Univ.*,
  957 F. Supp. 306 (D. Mass. 1997) .................................................................. 15, 18

*Hutchings v. Vanderbilt Univ.*,
  55 Fed. Appx. 308 (6th Cir. 2003) ........................................................................ 17

*In re Hilson*,
  448 Mass. 603 (2007) ........................................................................................... 20

*In re TJX Cos. Retail Sec. Breach Litig.*,
  564 F.3d 489 (1st Cir. 2009) ................................................................................. 20

*J&J Sports Prods. Inc. v. Cela*,
  139 F. Supp. 3d 495 (D. Mass. 2015) ................................................................... 20

*Jayson Associates v. United Parcel Service, Co*,
  2004 WL 1576725 (D. Mass. July 15, 2004) ........................................................ 20

*Karter v. Pleasant View Gardens, Inc.*,
  248 F. Supp. 3d 299 (D. Mass. 2017) ................................................................... 20

*Mangla v. Brown Univ.*,
  135 F.3d 80 (1st Cir. 1998) ....................................................................... 15, 16, 18

*Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics*,
  412 F.3d 215 (1st Cir. 2005) ................................................................................. 20

*Morris v. Brandeis Univ.*,
  60 Mass. App. Ct. 1119, 2004 WL 369106 (2004) ............................................... 15

*Pershouse v. L.L. Bean, Inc.*,
  368 F. Supp. 3d 185 (D. Mass. 2019) ................................................................... 18

*Platten v. HG Bermuda Exempted Ltd.*,
  437 F.3d 118 (1st Cir. 2006) ........................................................................... 18, 19

*Reed v. Zipcar, Inc.*,
  883 F. Supp. 2d 329 (D. Mass. 2012), *aff'd*, 527 Fed. Appx. 20 (1st Cir. 2013) .................... 18

*Regents of Univ. of Michigan v. Ewing*,
474 U.S. 214 (1985) ............................................................................................... 17

*Rivera v. Centro Medico de Turabo, Inc.*,
575 F.3d 10 (1st Cir. 2009) .............................................................................. 2, 10

*Robinson v. Spencer Stuart, Inc.*,
2013 WL 3989672 (D. Mass., Aug. 5, 2013) ....................................................... 20

*Rodríguez-Reyes v. Molina-Rodríguez*,
711 F.3d 49 (1st Cir. 2013) .................................................................................. 10

*Ross v. Creighton Univ.*,
957 F.2d 412 (7th Cir. 1992) ................................................................................ 17

*Russell v. Salve Regina College*,
890 F.2d 484 (1st Cir. 1989) ................................................................................ 15

*Salamon v. Terra*,
394 Mass. 857 (1985) ........................................................................................... 17

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017) ........................................................................ 16, 18, 19

*Showell v. Trustees of Boston Univ.*,
2 Mass. L. Rptr. 368, 1994 WL 879638 (Mass. Super. Ct., June 30, 1994) ........... 15

*Squeri v. Mt. Ida College*,
2019 WL 2249722 (D. Mass., May 24, 2019), *aff'd*,  954 F.3d 56 (1st Cir. 2020) ............... 12

*Squeri v. Mt. Ida College*,
954 F.3d 56 (1st Cir. 2020) ................................................................. 11, 12, 13, 14

*Struzziero v. Lifetouch Nat. School Studio*,
677 F. Supp. 2d 350 (D. Mass. 2009) ................................................................... 21

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) .............................................................................. 18, 19

*Vurimindi v. Fuqua School of Business*,
435 Fed. Appx. 129 (3d Cir. 2011) ....................................................................... 17

*Walker v. President and Fellows of Harvard College*,
840 F.3d 57 (1st Cir. 2016) .............................................................................. 15, 18

*Weiler v. PortfolioScope, Inc.,*
   469 Mass. 75 (2014) ................................................................................................ 21

**Additional Authorities**

*Commonwealth of Massachusetts, Office of the Governor,*
   *COVID Order No. 13* (March 23, 2020)............................................................... 5, 16

*Commonwealth of Massachusetts, Office of the Governor,*
   *COVID Order No. 21* (March 31, 2020)............................................................... 5, 16

*Commonwealth of Massachusetts, Office of the Governor,*
   *COVID Order No. 30*  (April 28, 2020)............................................................... 5, 17

*Massachusetts Executive Order No. 591*  (March 10, 2020) ......................................... 5

*Northeastern University Messages: Covid-19 Update* (March 12, 2020) ..................................... 5

*Northeastern University Messages: Further Reducing Density on our Campus*
   (March 14, 2020) .................................................................................................... 6

*Northeastern University Messages: Follow up to Student Housing Message*
   (March 14, 2020) .................................................................................................... 6

*Northeastern University Messages: Changes of Operations for Massachusetts Campuses*
   (March 23, 2020) .................................................................................................... 6

*Order Concerning Jury Trials and Other Proceedings* (March 12, 2020)................................... 5

*Order Concerning Grand Jury Proceedings* (March 13, 2020) ..................................... 5

*Order Concerning Temporary Closure of Springfield Court* (March 23, 2020) ........................... 5

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Local Rule 7.1(b), and this Court's order of June 29, 2020, defendant Northeastern University hereby submits this memorandum in support of its motion to dismiss the class action complaints in *Chong v. Northeastern Univ.*, Civil Action No. 20-10844-RGS, *Satam v. Northeastern Univ.*, Civil Action No. 20-10915-RGS, and *Bahrani v. Northeastern Univ.*, Civil Action No. 20-10946-RGS.  As explained below, each of the three complaints must be dismissed for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This case arises from Northeastern's closure of its campus and transition to virtual instruction as a result of the coronavirus pandemic and ensuing advice of public health authorities and gubernatorial directives.  In March 2020, in the face of this unparalleled public health crisis, Northeastern made the difficult decision to close its classrooms and campus for the health and safety of its students, its employees, and the broader community for the last five weeks of the Spring 2020 semester.  *See Chong* SAC ¶ 17; *Bahrani* Compl. ¶ 3; *Satam* Compl. ¶ 7.[1]  Driven by their steadfast and ongoing commitment to provide educational services to Northeastern's more than 25,000 undergraduate and graduate students, Northeastern faculty, staff, and administrators pivoted their attention to providing those services through online and remote instruction.  *See, e.g., Bahrani* Compl. ¶ 3 & n. 1 (citation omitted).

None of the plaintiffs alleges that Northeastern had any choice but to make this transition, and Bahrani affirmatively acknowledges that closure was necessary.  *Bahrani* Compl. ¶ 9.  Yet all

---

[1] "*Chong* SAC" refers to the Second Amended Complaint filed in *Chong v. Northeastern Univ.*, Civil Action No. 20-10844-RGS.  "*Satam* Compl." and "*Bahrani* Compl." refer, respectively, to the complaints filed in *Satam v. Northeastern Univ.*, Civil Action No. 20-10915-RGS, and *Bahrani v. Northeastern Univ.*, Civil Action No. 20-10946-RGS.

the plaintiffs allege that by transitioning to online education, Northeastern purportedly breached a promise to provide in-person instruction and access to on-campus facilities and was "unjustly enriched" as a result.  Plaintiffs Bahrani and Satam further allege that Northeastern's retention of their tuition constitutes actionable conversion.

As explained below, each of these claims fails on its face.  As a threshold matter, none of the complaints alleges with any specificity the terms of any contract between Northeastern and its students that obligated Northeastern to provide in-person instruction or unfettered access to on-campus facilities.  Two of the three complaints (*Satam* and *Bahrani*) do not reference *any* specific contract, nor do they allege any facts relating to the terms of the supposed contract at issue, much less where, when, or how any promise to provide in-person instruction or unlimited access to campus facilities was *ever* made by Northeastern.  And although the third complaint (*Chong*) attempts to identify a contract—the so-called "Annual Financial Responsibility Agreement" (hereinafter, the "SFRA"[2])—that same complaint concedes that the SFRA does not contain a provision obligating Northeastern to provide on-campus, in-person educational services.  *See Chong* SAC ¶ 9.  Nor does that complaint allege where, when, and how Northeastern ever agreed to provide its students with unrestricted access to campus facilities in the face of a global pandemic.  Indeed, Northeastern's publicly available graduate and undergraduate student catalogs that are provided to each student[3] make clear that Northeastern retains broad discretion to adjust the

---

[2]Although the document is captioned as the "Annual Financial Responsibility Agreement," *see Chong* SAC ¶ 9, the document is routinely referred to as the "Student Financial Responsibility Agreement" ("SFRA").  Accordingly, Northeastern employs that acronym here.

[3] In considering this Motion under Rule 12(b)(6), this Court may properly consider these publicly-available materials—"the authenticity of which [cannot be] disputed" and which are necessarily "central to plaintiffs' claims."  *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (recognizing the exception applicable to such materials) (citing *Alternative Energy, Inc.*

manner and means by which it provides its educational services to its students.  Accordingly, Northeastern's March 2020 decision to shift to the alternative of online and remote learning in the face of the global COVID-19 pandemic was *entirely consistent* with its explicit representation that it would deliver education to its students, and could do this via more than one modality.  This fact defeats not only plaintiffs' contract claims, whether they be for breach of an express or implied contract, but also their claims for unjust enrichment and conversion invalid.  All three complaints must therefore be dismissed.

## FACTUAL BACKGROUND

Plaintiff Man chung ("Manny") Chong is a rising second-year graduate student who is enrolled in the Master of Science in Counseling Psychology program at Northeastern.  *Chong* SAC ¶ 2.  Plaintiff Thane Gallo is an undergraduate student at Northeastern who expects to earn a Bachelor of Science Degree in May 2023.  *Id.* ¶ 3.  Plaintiff Gaurav Satam is a Northeastern graduate student who recently completed his coursework for his Master of Science in Engineering Management degree.  *Satam* Compl. ¶ 16.  Plaintiff Manisha Bahrani is enrolled as a graduate student in Northeastern's Master of Science in Information Systems program.  *Bahrani* Compl. ¶ 10.

All four plaintiffs allege that they paid tuition and various fees[4] to Northeastern for the Spring 2020 semester.  *Chong* SAC ¶ 11; *Satam* Compl. ¶¶ 14, 26; *Bahrani* Compl. ¶ 15.  They all

---

*v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).  If, however, this Court determines that the exception does not apply here, it may properly convert the portion of this motion addressing these materials to one for summary judgment. *See, e.g., Firth v. T.D. Bank N.A.*, 2014 WL 172201 at *1 (D. Mass. Jan. 14, 2014).

[4] Messrs. Chong and Gallo identify three types of fees that they allegedly paid for the Spring 2020 semester: an undergraduate/graduate "student activity fee"; a "recreation fee"; and "student center fee."  *Chong* SAC ¶ 11.  Mr. Satam alleges that he paid a "variety of fees" for the Spring 2020

propose to represent a class of individuals who did the same.  *Chong* SAC ¶¶ 27, 31, 33; *Satam* Compl. ¶ 37; *Bahrani* Compl. ¶ 29.[5]

Plaintiffs' Spring 2020 semester courses were originally scheduled to take place in person, on Northeastern's Boston campus.  *Chong* SAC ¶¶ 10-11.  On March 10, 2020, in response to the fast-moving global COVID-19 pandemic, Governor Charles D. Baker declared a state of emergency in the Commonwealth of Massachusetts, announcing that "the worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States and the Commonwealth significantly affect the life and health of our people, as well as the economy, and is a disaster that impacts the health, security and safety of the public."[6]  Over the following weeks, Governor Baker issued a series of additional Emergency Orders, including an Order mandating the closure of the physical workplaces and facilities of "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services" (the "Essential Services

---

term, including "recreation fees," "library fees" and "a fee to use campus printers."  *Satam* Compl. ¶ 26.  Ms. Bahrani alleges that Northeastern assesses "mandatory fees" that include, but are not limited to, "a Residential Student Fee, Student Activity Fee, Student Center Fee, Student Recreation Fee, and [an] Undergraduate Student Fee." *Bahrani* Compl. ¶¶18-19.

[5] The descriptions of the proposed classes differ slightly across complaints.  The *Chong* complaint seeks to create three distinct classes, a "Tuition Class" that includes both graduate and undergraduate students, an "Undergraduate Fees Class," and a "Graduate Fees Class." *See Chong* SAC ¶¶ 26-34.  The *Bahrani* complaint seeks to create a single class of Northeastern students who paid Spring Semester 2020 tuition and/or fees, along with a subclass of Class members who reside in Massachusetts.  *Bahrani* Compl. ¶¶ 29-30.  The *Satam* complaint defines its single class as including all persons in the United States who paid Northeastern "tuition and/or fees for in-person education for the academic term including March 2020 and for any academic term thereafter during which Northeastern failed to provide in person educational services."  *Satam* Compl. ¶ 37.

[6] *See* Massachusetts Executive Order No. 591 (March 10, 2020).

Order").[7]   Pursuant to that Essential Services Order, which was subsequently extended until May 18, 2020,[8] businesses and "other organizations" in Massachusetts that do not provide "Essential Services"—a category that includes higher education institutions—were "encouraged to continue operations where they are able to operate through remote means that do not require workers, customers or the public to enter or appear at the brick-and-mortar premises closed by this Order."[9]

Like this Court[10] and many other institutions, Northeastern recognized the necessity of closing its facilities for the health and safety of its students, its employees, and the broader community for the remainder of the Spring 2020 semester.  *See Chong* SAC ¶ 17; *Bahrani* Compl. ¶ 3; *Satam* Compl. ¶ 7.  Beginning on March 12 and continuing for the final five weeks of the Spring 2020 semester, Northeastern provided instruction to its students in an entirely virtual format.  *Chong* SAC ¶ 17; *Satam* Compl. ¶ 8; *Bahrani* Compl. ¶¶ 4-5 & n. 2-3.[11] On March 14,

---

[7] *See* Commonwealth of Massachusetts, Office of the Governor, COVID-19 Order No. 13 (March 23, 2020), *available at* https://www.mass.gov/doc/march-23-2020-essential-services-and-revised-gatherings-order/download.

[8] *See* Commonwealth of Massachusetts, Office of the Governor, COVID-19 Order No. 21 (March 31, 2020), *available at* https://www.mass.gov/doc/march-31-2020-essential-services-extension-order/download (extending the Essential Services Order until May 4, 2020); *see also* Commonwealth of Massachusetts, Office of the Governor, COVID Order No. 30 (April 28, 2020) *available at* https://www.mass.gov/doc/signed-second-extension-of-essential-services-order/download (extending the Essential Services Order until May 18, 2020).

[9] *Id.* at Section 2.

[10] *See, e.g.*, Order Concerning Jury Trials and Other Proceedings (March 12, 2020), *available at* https://tinyurl.com/y2535bj3 (suspending jury trials); Order Concerning Grand Jury Proceedings (March 13, 2020), *available at* https://tinyurl.com/y6jjtjqq (suspending grand jury proceedings); Order Concerning Temporary Closure of Springfield Court Facilities (March 23, 2020), *available at* https://tinyurl.com/yyomdczm (temporarily closing Springfield courthouse because an employee reported COVID-19 symptoms).

[11] Citing *Northeastern University Messages: Covid-19 Update* (March 12, 2020), *available at* https://news.northeastern.edu/coronavirus/university-messages/the-latest-covid-19-updates/   and

2020, Northeastern announced that all students residing in on-campus residence halls were to move out no later than March 17, 2020.  Bahrani, Compl. ¶ 4 & n. 3.[12]  Thereafter, on March 23, 2020, in accordance with the Governor's Essential Services Order, Northeastern formally restricted access to its Massachusetts campus to "on-site essential" employees only.  See *Chong* SAC ¶ 22; *Satam* Compl. ¶¶ 7, 8; *Bahrani* Compl. ¶¶ 4, 23.[13]

# I.   THE PLAINTIFFS' ALLEGATIONS AGAINST NORTHEASTERN

## A.   Gaurav Satam

Plaintiff Satam alleges that he entered into a "binding contract[]" with Northeastern pursuant to which he paid "tuition and fees in exchange for on-campus in-person educational, social, athletic, and other experiences." *Satam* Compl. ¶ 45.  Mr. Satam, however, does not identify any specific "binding contract" that applies to his claim.  Instead, he refers generally to "the education, services and other experiences that the University promised," and complains repeatedly about the quality of the educational services provided to him by Northeastern after its transition to online and remote instruction.  He alleges that the online classes provided by Northeastern "are

---

*Northeastern University Messages: Further Reducing Density on our Campus* (March 14, 2020), *available at* https://news.northeastern.edu/coronavirus/university-messages/further-reducing-density-on-our-campus/.

[12] Citing *Northeastern University Messages: Further Reducing Density on our Campus*.  In connection with its decision to close its residence halls in response to the COVID-19 pandemic, Northeastern announced that room and board costs for students residing in those halls would be pro-rated for the remainder of the Spring 2020 semester.  *See Northeastern University Messages: Follow up to Student Housing Message* (March 14, 2020), *available at* https://news.northeastern.edu/coronavirus/university-messages/follow-up-to-student-housing-message/.

[13] *See also Northeastern University Messages: Changes of Operations for Massachusetts Campuses* (March 23, 2020), *available at* https://news.northeastern.edu/coronavirus/university-messages/change-of-operations-for-massachusetts-campuses/.

substantially less valuable than the classes promised," and that the education he received through the online classes was of "dramatically lower quality and less valuable." *Satam*, Compl. ¶ 11-12. He refers to Northeastern's online classes as "substandard," "lesser," and "of inferior quality." *Id.* ¶¶ 14, 15, 27.

Mr. Satam asserts claims against Northeastern for breach of contract, restitution based on quasi-contract, and conversion. *Id.* ¶¶ 43-66. All three claims seek a return of a prorated portion of the tuition and fees paid by Northeastern students for the Spring 2020 semester. *Id.* ¶¶ 50, 58, 66.

**B.    Manisha Bahrani**

Like Mr. Satam, Ms. Bahrani does not identify any specific contract that governs her claim against Northeastern. Instead, she simply refers broadly to "the educational services, facilities, access and/or opportunities" that she allegedly "contracted and paid for." *Bahrani* Compl. ¶¶ 6, 23. Elsewhere, she alleges that "[t]hrough the admission agreement and payment of tuition and fees," she entered into a binding contract with Northeastern. *Id.* ¶ 40. However, she provides no details about the purported contents of this "admission agreement" or any "binding contract."

Again like Mr. Satam, Ms. Bahrani complains about the quality of the online educational services provided by Northeastern after March 2020, contending that "[t]he remote learning options are in no way the equivalent of . . . in-person education." *Id.* ¶¶ 6, 27. She alleges that the "online learning options being offered to Northeastern students are subpar in practically every aspect and a shadow of what they once were." *Id.* ¶ 26.

Ms. Bahrani asserts claims against Northeastern for breach of contract, unjust enrichment and conversion. *Id.* ¶¶ 38-59. Like Mr. Satam, each of Ms. Bahrani's claims seeks to recover a prorated portion of the tuition and fees paid by Northeastern students for the Spring 2020 semester. *Id.* ¶¶ 44, 50, 59.

## C.    Manny Chong and Thane Gallo

Unlike the *Satam* and *Bahrani* complaints, the *Chong* complaint attempts to base its claims against Northeastern upon a specified written agreement between the plaintiffs and the University. Specifically, Messrs. Chong and Gallo allege that, in January 2020, they each executed an "Annual Financial Responsibility Agreement" (the "SFRA") with Northeastern, which provides as follows:

> In exchange for the opportunity to enroll at Northeastern, to receive educational services, and for other valuable consideration, I agree to the following terms and conditions:
>
> PAYMENT OF FEES/PROMISE TO PAY
>
> . . . I accept full responsibility to pay all tuition, fees and other associated costs assessed as result of my registration and/or receipt of services. . .

*Chong* SAC ¶¶ 8, 9.

Chong and Gallo acknowledge that "'[e]ducational services' is not a defined term" in the SFRA.  *Id.* ¶ 8.  Nor is the "other valuable consideration" referenced in the SFRA defined.  *Id.* They contend, however, that Northeastern somehow breached its contractual obligations under the SFRA when Northeastern ceased providing in-person instruction in March 2020, *id.* ¶ 55, and when it ceased allowing its undergraduate and graduate students to have access to its various on-campus facilities.  *Id.* ¶¶ 65, 75.

The *Chong* Complaint advances two theories of liability against Northeastern on behalf of its three proposed classes: a claim for breach of contract based on Northeastern's alleged breach of the SFRA, and an unjust enrichment claim for each class, which is pled in the alternative.[14]  *Id.* ¶¶ 51-80.  The breach of contract claims seek an unspecified amount of damages arising from the

_____

[14] Because the Chong Complaint purports to identify three separate classes, *see supra* n. 5, the Complaint asserts six causes of action in total.

alleged breach, *id.* ¶¶ 56, 66, 76, while the unjust enrichment claims seek disgorgement of amounts allegedly improperly retained by Northeastern.  *Id.* ¶¶ 60, 70, 80.

Notably, none of the plaintiffs alleges, nor could they, that Northeastern's transition to virtual instruction for completion of the spring semester prevented them from receiving course credits and progressing towards their desired degrees, or, in the case of Satam, actually graduating with a master's degree in engineering.

### D.    The "Delivery of Services" Provision in the Northeastern Catalogs

Finally, although not explicitly referenced in the Complaints, the 2019-2020 course catalogs that were provided to all Northeastern graduate and undergraduate students prior to the Spring 2020 semester and that were and are available on-line to the general public, include language relating to Northeastern's delivery of educational services to its students.  *See* Affidavit of James Lemmon. ¶ 3 & Exs. A & B; *see also* Graduate Catalog Appendix: General Information,[15] Undergraduate Catalog Appendix: General Information.[16]  Each provides:

> *Delivery of Services.*  Northeastern University assumes no liability for delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control. Causes include, without limitation, power failure, fire, strikes by university employees or others, damage by natural elements, and acts of public authorities. The university will, however, exert reasonable efforts, when it judges them to be appropriate, to provide comparable services, facilities, or performance; but its inability or failure to do so shall not subject the university to liability.
>
> Northeastern University reserves the sole right to promulgate and change rules and regulations and to make changes of any nature in its program; calendar; admissions policies, procedures, and standards; degree requirements; fees; and academic schedule whenever necessary or desirable, including, without limitation, changes in course content and class schedule, the cancellation of scheduled classes and other academic activities, and the substitution of alternatives for scheduled classes and

---

[15] *Available at* https://registrar.northeastern.edu/2019-2020-catalog-and-course-descriptions.

[16] *Id.*

other academic activities. In any such case, the university will give whatever notice
is reasonably practical.

*See id.* at Ex. A & B.

## GOVERNING STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009) (quotations omitted). "[W]here the well-pleaded facts do not permit the court to
infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 679.
Indeed, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to
remove the possibility of relief from the realm of mere conjecture, the complaint is open to
dismissal." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013).

The court may consider, in addition to the allegations within the four corners of the
complaint, documents "the authenticity of which [cannot be] disputed" and which are necessarily
"central to plaintiffs' claims." *See Rivera*, 575 F.3d at 15 (recognizing the exception applicable to
such materials) (citing *Alternative Energy*, 267 F.3d at 33). If, however, the court determines that
the exception does not apply, it may properly convert the portion of this motion addressing these
materials to one for summary judgment. *See, e.g., Firth*, 2014 WL 172201 at *1.

In order to avoid dismissal, a complaint should "at least set forth minimal facts as to who
did what to whom, when, where, and why." *Buck v. Am. Airlines*, 476 F.3d 29, 38 (1st Cir. 2007)
(citation omitted; affirming dismissal of claim for breach of contract).

## ARGUMENT

## II.    THE COMPLAINTS DO NOT STATE CLAIMS FOR BREACH OF CONTRACT.

Under Massachusetts law, a breach of contract claim requires a plaintiff to show that "(1)
a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to

perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013).  For a plaintiff asserting a breach of contract claim, "it is essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof."  *Squeri v. Mt. Ida College,* 954 F.3d 56, 71 (1st Cir. 2020) (citations and quotations omitted).

### A.     The *Satam* and *Bahrani* Complaints Are Deficient.

As noted, the *Satam* and *Bahrani* Complaints do not even attempt to identify the source of their supposed contractual right to in-person education and access to Northeastern's facilities. Instead, the *Satam* Complaint simply alleges, without reference to any specific contract, that "in-person instruction" and "facilities" are among things "for which Plaintiff and the Class paid." *Satam* Compl. ¶ 8; *see also id.* ¶ 29.  Elsewhere, the *Satam* Complaint alludes generally to "the education, services, and other experiences that the University promised," without any reference to when, where and how these alleged promises were made.  *Id.* ¶ 12.  The *Bahrani* Complaint similarly refers generally to the "educational services, facilities and/or opportunities," including "in-person educational services" that the proposed class allegedly "paid for." *Bahrani* Compl. ¶¶ 6, 23, 27.  Both complaints then proceed to allege that Northeastern's failure to provide in-person educational services and other on-campus access amounted to a breach of contract.  *See Satam* Compl. ¶ 45-46; *Bahrani* Compl. ¶ 41.

In *Squeri*, a group of students brought a putative class action against Mount Ida College and various university officials after the college closed suddenly at the end of the 2018 academic year.  *Squeri,* 954 F.3d at 63-64.  Among the plaintiffs' proposed claims for relief was a claim for breach of contract, which alleged that Mount Ida had breached a contract "by failing to provide the education [that plaintiffs] bargained for and paid for."  *Id.* at 65 (quoting the Plaintiffs' Amended Complaint).  In dismissing the plaintiffs' breach of contract claim, this Court explained

that the plaintiffs had failed to identify, among other things, the specific terms of the purported contract, "including when it was formed, and who negotiated it." *Squeri v. Mt. Ida College*, 2019 WL 2249722, at \*5 (D. Mass., May 24, 2019), *aff'd,* 954 F.3d 56 (1st Cir. 2020).

On appeal, the First Circuit agreed, noting that the complaint "does not allege the terms of any such contract or that specific terms required earlier disclosure of the closing [by Mount Ida]." *Squeri,* 954 F.3d at 63-64.  The First Circuit also noted that the allegations "failed to explain how these actions formed an express or implied contract which obliged Mount Ida to provide earlier notice of its difficulties to its students than it did." *Id.* at 71-72.  In short, the First Circuit concluded that the plaintiffs' general contentions that they had paid tuition and enrolled at Mount Ida were insufficient to support their allegations regarding the "specific terms" that the plaintiffs sought to enforce. *Id.*

Both the *Satam* and *Bahrani* complaints fail for precisely same reason.  They fail to allege with any "substantial certainty" *any* facts that would give rise to the specific contractual terms alleged by the plaintiffs.  *Squeri*, 954 F.3d at 71-72.  Instead, they simply refer repeatedly to the payment of tuition and fees as somehow automatically providing an unlimited right to on-campus classes and unfettered access to campus facilities, even in the face of a global pandemic.  *See Satam* Compl. ¶¶ 8, 12-13; *Bahrani* Compl. ¶¶ 6, 23.  But, as this Court recognized in *Squeri*, the mere payment of tuition and fees to a university does not create enforceable and specific contractual rights.  *Squeri*, 2019 WL 2249722 at \*5.  The complaint must, at a minimum, describe "the specific terms of the contract, when it was formed, and who negotiated it." *Id.*; *accord Squeri*, 954 F.3d at 71-72.  The *Bahrani* and *Satam* complaints fail to allege any such facts, and thus fail to state cognizable claims for breach of contract.

Nor can the *Bahrani* and *Satam* complaints escape dismissal under a theory of "implied contract." Although "a contract implied in fact may be found to exist from the conduct and relations of the parties," it remains "essential [for the plaintiff] to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." *Squeri*, 954 F.3d at 71 (quotations omitted). Accordingly, just like an express contract claim, any claim for breach of an implied contract must, at a minimum, describe the agreement between the parties with some degree of specificity. *Id.* at 71-72 (affirming dismissal of claims alleging breach of both an express and implied contract)*; see also Anthes v. New York Univ.*, No. 17cv2511 (ALC), 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018) (breach of implied contract claim "foreclosed by lack of specificity as to the agreement between the parties"). The failure of both the *Satam* and the *Bahrani* complaints to plead any specific details regarding where, when, and how Northeastern supposedly promised its students it would provide in-person educational services and unrestricted access to campus facilities either generally or more specifically in the context of a pandemic accordingly means that any claims for breach of any implied contract between Northeastern and its students must also be rejected.

### B.   The *Chong* Complaint Does Not Allege a Breach of the SFRA.

As noted above, Messrs. Chong's and Gallo's breach of contract claims are based solely upon the SFRA, an agreement that plaintiffs allege they executed with Northeastern in January 2020. *Chong* SAC ¶¶ 9, 10, 52, 62, 72. Chong and Gallo contend that Northeastern breached the SFRA in March 2020 when it ceased to provide in-person instruction to plaintiffs and when it ceased to permit plaintiffs' access to campus facilities. *Id.* ¶¶ 55, 65, 75.

But as they admit, the SFRA provides only that students will pay tuition, fees, and other associated costs "[i]n exchange for the opportunity to enroll at Northeastern, to receive educational services, and for other valuable consideration." *Chong* SAC ¶ 9. The SFRA does not define

"educational services" or "other valuable consideration." *Id.* Nor does the SFRA contain any language regarding the manner in which those "educational services" may be provided, much less any language reflecting a promise by Northeastern to provide those "educational services" solely in an on-campus, in-person format. *Id.* Similarly, nothing in the SFRA provides that Northeastern is obligated to permit access to all campus facilities and activities, irrespective of any health or safety risks that such access may pose. *Id.* Accordingly, plaintiffs Chong and Gallo have failed to allege *any* facts that support the existence of the specific contractual obligations they seek to enforce. For that reason, their breach of contract claims must be dismissed. *Squeri*, 954 F.3d at 71-72.

### C.   Plaintiffs' Claims Are Invalid Due to the "Delivery of Services" Provisions in the Northeastern Catalogs.

Plaintiffs' collective inability to allege any specific contractual terms to support their claims can be explained by Northeastern's express statements to its students in the course catalogs it provides to all undergraduate and graduate students. Specifically, statements in the "Delivery of Services" provisions of Northeastern's course catalogs preclude any reasonable expectation that Northeastern agreed to provide its educational services only in-person or that students would be entitled to unfettered access to campus facilities to its students during a global pandemic.

In fact, as noted above, Northeastern's catalogs specifically advised plaintiffs in writing to the contrary—that is, that Northeastern has expressly retained broad discretion to "make changes *of any nature* in its program," including "changes in course content and class schedule" and (perhaps most critically) "*the substitution of alternatives for scheduled classes and other academic*

*activities*." *See* Lemmon Aff. at Exs. A & B. (emphases added).[17]  *See Walker*, 840 F.3d at 62-63

(rejecting student's breach of contract claim because student could not have reasonably expected

that the words in the Student Handbook had a meaning different than their "plain meaning");

*Mangla,* 135 F.3d at 83 (explaining that university could "reasonably expect students to be aware"

of language in school catalog); *see also Essigmann v. Western New England College*, 419 N.E.2d

1047, 1049 (Mass. App. Ct. 1981) (rejecting breach of contract claim by student where school

catalog expressly reserved college's right to withdraw course offerings); *Showell v. Trustees of

Boston Univ.*, 2 Mass. L. Rptr. 368, 1994 WL 879638 (Mass. Super. Ct., June 30, 1994) (asserted

breach of contract regarding university's grading policy failed where catalog granted the university

the right to determine academic requirements).

The "Delivery of Services" provision also specifically disclaims any and all liability arising

out of any failure by Northeastern to provide "educational or other services or facilities due to

*causes beyond its reasonable control*."  *See* Lemmon Aff. at Exs. A & B (emphasis added).

---

[17] Whether terms of catalogs or handbooks "*always* constitutes a contract is, arguably, an unsettled issue under Massachusetts law," *Walker v. President and Fellows of Harvard College,* 840 F.3d 57, 61 (1st Cir. 2016) (emphasis added). For example, "where a handbook contains generalized representations that are aspirational or too vague to form a certain and definite promise, such provisions are not contractually enforceable." *G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381, 399 (D. Mass. 2017) (citing *Morris v. Brandeis Univ.*, 60 Mass. App. Ct. 1119, 2004 WL 369106, at *3 n.6 (2004). But where a provision of a catalog provides reasonable expectations to students, as the Delivery of Services clause does, courts have found the statements may inform any contractual relationship found to exist between students and the university.  *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998) (recognizing the provisions in a graduate school catalog as reflecting part of the contractual relationship between a university and its students); *Russell v. Salve Regina College*, 890 F.2d 484, 488 (1st Cir. 1989) ) (considering "the various catalogs, manuals, handbooks, etc., that form the contract between student and institution"), *rev'd on other grounds*, 499 U.S. 225 (1991), *reinstated on remand,* 938 F.2d 315, 316 (1st Cir. 1991; *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 593 (D. Mass. 2016) (same); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 317 (D. Mass. 1997) (same).

Notably, this provision defines "causes" to include (but not be limited to) "*damage by natural elements*" and "*acts of public authorities*." *Id*. (emphases added).  Here, all three complaints make clear that Northeastern's shift to an online educational format for the final five weeks of the Spring 2020 semester and its closure of campus facilities were necessarily caused by an event that was "beyond its reasonable control": the COVID-19 pandemic.  *See, e.g., Satam* Compl. ¶ 7; *Bahrani* Compl. ¶ 21. Nor is there any doubt that Northeastern's alleged failure, which in fact was an inability, to provide in-person educational services and access to campus facilities was also caused by "acts of public authorities"—specifically, the various Essential Services Orders issued by the Massachusetts Governor, each of which expressly barred Northeastern from providing in-person education and/or access to its campus facilities for the period between March 23, 2020 and May 18, 2020.[18]

For these reasons, plaintiffs' various breach of contract claims based on that transition to online classes simply cannot survive.  *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 15-16 (1st Cir. 2017).

**D.    The *Satam* and *Bahrani* Complaints Impermissibly Purport to Assert Claims Challenging the Quality of Their Education.**

In the absence of a specific contractual promise that has been breached, the *Satam* and *Bahrani* Complaints include scattered allegations that the quality of online instruction is inferior

---

[18] *See* Commonwealth of Massachusetts, Office of the Governor, COVID-19 Order No. 13 (March 23, 2020), *available at* https://www.mass.gov/doc/march-23-2020-essential-services-and-revised-gatherings-order/download; Commonwealth of Massachusetts, Office of the Governor, COVID-19 Order No. 21 (March 31, 2020), *available at* https://www.mass.gov/doc/_march-31-2020-essential-services-extension-order/download; *see also* Commonwealth of Massachusetts, Office of the Governor, COVID Order No. 30 (April 28, 2020), *available at* https://www.mass.gov/doc/signed-second-extension-of-essential-services-order/download.

to that rendered in person.   However, like the "overwhelming majority" of jurisdictions, Massachusetts does not recognize claims challenging the quality of a student's education.  *Doe v. Town of Framingham*, 965 F. Supp. 226, 229-30 (D. Mass. 1997) (citing *Ross v. Creighton Univ.*, 957 F.2d 412, 414 (7th Cir. 1992); *see also, e.g., Ambrose v. New England Ass'n of Schools and Colleges, Inc.,* 252 F.3d 488, 499 (1st Cir. 2001) (citing *Ross* and affirming dismissal, under Maine law, of claims that students received inferior college educations due to improper accreditation); *Vurimindi v. Fuqua School of Business,* 435 Fed. Appx. 129, 133 (3d Cir. 2011) ("To the extent that [plaintiff] presented a general complaint about the quality of the education he received, his claim was not actionable."); *Hutchings v. Vanderbilt Univ.*, 55 Fed. Appx. 308, 310 (6th Cir. 2003); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-207 (S.D.N.Y. 1998).   Indeed, the Supreme Court has explained that federal courts are not "suited to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions." *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 226 (1985).   Accordingly, to the extent the *Satam* and *Bahrani* Complaints purport to challenge the quality of the educational services they received from Northeastern, those claims are invalid.

## III.     THE THREE COMPLAINTS FAIL TO STATE CLAIMS FOR UNJUST ENRICHMENT.

Each of the complaints has separately asserted claims for unjust enrichment against Northeastern.   *See Chong* Compl*. ¶¶* 57-60, 67-70, 77-80; *Bahrani* Compl. *¶¶* 46-51; *Satam* Compl. *¶¶* 52-58.[19]   But under Massachusetts law, an unjust enrichment claim is not cognizable

---

[19] The *Satam* Complaint styles its claim as a claim for "restitution based on quasi-contract."  *Satam* Compl. *¶¶* 52-58.   Under Massachusetts law, however, such a claim is identical to an equitable claim for unjust enrichment.  *See Salamon v. Terra,* 394 Mass. 857, 860 (1985).

where a plaintiff has an available claim for breach of contract, *regardless* of whether such a claim is viable.  *Shaulis*, 865 F.3d at 16.  Indeed, "[i]t is the *availability* of a remedy at law, not the *viability* of that remedy, that prohibits a claim for unjust enrichment."  *Id.* (emphases added) (citing *Reed v. Zipcar, Inc.*, 883 F.Supp.2d 329, 334 (D. Mass. 2012), *aff'd* 527 Fed. Appx. 20 (1ˢᵗ Cir. 2013)); *accord Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing unjust enrichment claim where plaintiffs had a contractual relationship with the defendant but their separately-asserted breach of contract claim was insufficient to state a claim for relief).  "Massachusetts law does not permit litigants to override an express contract by arguing unjust enrichment."  *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006); *accord Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020).

Here, the failure of all three complaints sufficiently to allege their claims for breach of contract against Northeastern does *not* mean that that *no* contractual relationship exists between Northeastern and its graduate and undergraduate students.  While the student-college relationship is complex and not all aspects are governed by contract, courts have held that the "student-college relationship is essentially contractual in nature."  *See, e.g., Mangla,* 135 F.3d at 83, and *Schaer,* 432 Mass. at 483.  The terms and scope of any agreement between a student and a university may be informed by statements included in student manuals and registration materials, including course catalogs.  *Mangla,* 135 F.3d at 83; *see also Guckenberger,* 957 F. Supp. at 317; *cf. Walker,* 840 F.3d at 61 n. 5 (considering the language of a Student Handbook when evaluating student's breach of contract claim).  And here, as explained above, Northeastern's catalog expressly reserved its discretion to substitute alternatives for scheduled classes and academic activities. The Delivery of Services clause also disclaimed any and all liability arising out of any failure by Northeastern to provide educational or other services or facilities due to "causes beyond its reasonable control,"

including specifically "natural elements" such as the coronavirus and the "acts of public authorities" such as Governor Baker.  *See* Lemmon Aff. at Exs. A & B.

Where the terms of an agreement govern the relationship between the parties, a party may not attempt to disregard those terms by asserting a claim for unjust enrichment.  *Tomasella,* 962 F.3d at 84; *Shaulis*, 865 F.3d at 16; *accord Platten,* 437 F.3d at 130.  This rule applies here, because the terms of the existing relationship between Northeastern and its graduate and undergraduate students relevant to the plaintiffs' claims are contractual in nature.  *See also Bleller v. College of Holy Cross*, 2013 WL 4714340 (D. Mass., Aug. 26, 2013) ("[A] plaintiff is not entitled to recover on a theory of unjust enrichment where there is a valid contract that defines the obligations of the parties.")(denying claim by properly expelled student for tuition refund).  No claim for unjust enrichment is permitted.[20]

## IV.   THE *SATAM* AND *BAHRANI* COMPLAINTS FAIL TO STATE CLAIMS FOR CONVERSION.

Ms. Bahrani and Mr. Satam allege that Northeastern converted their "rights" to receive certain services from Northeastern.  Ms. Bahrani alleges that Northeastern deprived her of "an ownership right to the in-person educational services" she was to be provided by Northeastern. *See Bahrani* Compl. ¶ 54.  Mr. Satam similarly complains that Northeastern deprived him of his "right to the in-person educational and extra-curricular services" at Northeastern for which he allegedly paid.  *Satam* Compl. ¶¶ 61.  Neither plaintiff states a claim.

---

[20] Furthermore, like plaintiffs' breach of contract claims, the unjust enrichment claims may not serve as a vehicle to challenge the quality of the education that the plaintiffs received from Northeastern and are therefore foreclosed on this ground as well. *See* Section II(D), *supra.*

Neither plaintiff identifies the basis or source of "ownership rights"" with any reasonable specificity. For that reason alone, their conversion claims must be dismissed. *Jayson Associates v. United Parcel Service, Co,* 2004 WL 1576725 (D. Mass. July 15, 2004) ("Defendant cannot convert what plaintiff does not own.").

But, even assuming that such "ownership rights" in an in-person education even exist, conversion claims simply do not lie for such a form of intangible property. *Karter v. Pleasant View Gardens, Inc.*, 248 F. Supp. 3d 299, 315 (D. Mass. 2017) (citing *In re Hilson*, 448 Mass. 603, 611 (2007)). "'At common law, a conversion claim is viable only in cases involving tangible chattels,' and courts throughout this district have 'consistently held that a plaintiff is not entitled to recover for conversion of intangible property.'" *Id.* (citing *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 386 (D. Mass 2012)); *see also Robinson v. Spencer Stuart, Inc.*, 2013 WL 3989672 at * 8 (D. Mass., Aug. 5, 2013) (rejecting conversion claim based on an alleged "right" to collect an unpaid commission). The plaintiffs do not allege deprivation of a physical chattel, so their claims must be dismissed.[21]

Furthermore, even if the asserted intangible rights were susceptible of conversion (and they are not), the plaintiffs had no rights to in-person instruction or continued use of the campus during a pandemic for the reasons discussed above. This point also forecloses their claims. *See Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics,* 412 F.3d 215, 230-31 (1st Cir.

---

[21] In *Karter*, Judge Zobel noted the First Circuit's statement that "[w]hether or not Massachusetts limits conversion claims to tangible property is debatable." 248 F. Supp. 3d at 315 (quoting *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009)). But any intangible property subject to a viable conversion claim has in some way merged with or inhered in a physical object and/or involved cable or satellite piracy. *J&J Sports Prods. Inc. v. Cela*, 139 F. Supp. 3d 495, 501 (D. Mass. 2015) (collecting cases). Of course, neither is at issue here.

2005) ("no conversion occurred" where defendant did not "*wrongfully* exercise acts of ownership") (quotation omitted); *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 87-88 (directing dismissal of conversion claim where the claim was inconsistent with plaintiff's unambiguous contractual rights).

Finally, neither plaintiff alleges that Northeastern wrongfully collected their tuition when it came due, so there was admittedly no conversion at that time.  Rather, the gravamen of their case is that they are entitled to some sort of a refund after the fact based on the allegedly inferior quality of online instruction for the portion of the semester during which that was required.  *Satam* Compl. ¶ 65; *Bahrani* Compl. ¶ 57.  And while Satam (but not Bahrani) alleges a pre-suit demand by unnamed "class members," *Satam* Compl. ¶ 64, refusal of a demand does not constitute a conversion when the plaintiff does not have title and an immediate right to possession.  *Discover Realty Corp. v. David*, 2003 Mass. App. Div. 172, 175, 2003 Mass. App. Div. LEXIS 63, *14 (upholding trial judge's determination that plaintiff alleging defendants failed to distribute money held under a trust agreement had not made out a conversion claim).  Indeed, Massachusetts courts have repeatedly rejected efforts by plaintiffs to assert claims for "conversion" where those claims are based not upon a specific deprivation of an immediate right of possession, but rather an alleged failure to perform on contractual obligations.  *See, e.g. Struzziero v. Lifetouch Nat. School Studio*, 677 F. Supp. 2d 350, 354 (D. Mass. 2009) (granting summary judgment to defendant on conversion count for unpaid commissions).  Indeed, if the plaintiff's pleading theory were correct, virtually any claim for breach of contract could be accompanied by a tort claim for conversion on the theory that the defendant's pre-suit failure to pay damages for breach constituted a "conversion" of the plaintiff's funds.  That is plainly not the law.

**CONCLUSION**

For all the foregoing reasons, defendant Northeastern University respectfully requests that this Court dismiss the three complaints with prejudice.

Respectfully submitted,

NORTHEASTERN UNIVERSITY

By its attorneys,

/s/ John A. Shope
John A. Shope, BBO #562056
Rachel C. Hutchison, BBO # 696739
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA  02210
Tel: 617-832-1000
jshope@foleyhoag.com
rhutchinson@foleyhoag.com

s/ Victoria L. Steinberg
Victoria L. Steinberg, BBO #666482
Daniel J. Cloherty, BBO # 565772
Rebecca O'Brien, BBO # 693592
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA  02210
Tel: 617-720-2626
vsteinberg@toddweld.com
dcloherty@toddweld.com
robrieb@toddweld.com

Dated: August 24, 2020

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule 7.1(a)(2), I certify that counsel for Northeastern conferred with counsel for Chong, Satam, and Bahrani prior to filing this motion and the parties were unable to reach agreement.


*/s/ John A. Shope*_____

John A. Shope


## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2020, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such to all counsel of record via the CM/ECF system.


*/s/ Rachel C. Hutchison*_____

Rachel C. Hutchison